IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES ALEXANDER,

    Plaintiff,                    No. 2:08-cv-2773 MCE KJN P

    vs.

CALIFORNIA DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.             ORDER
_____/

        Plaintiff is a state prisoner proceeding without counsel in this civil rights action in which plaintiff challenges prison regulations that allegedly ban possession of material depicting non-obscene female nudity. This action proceeds on plaintiff's Second Amended Complaint. Discovery closed on January 31, 2010 (Dkt. No. 75.); the deadline for filing dispositive motions is March 31, 2001 (Dkt. No. 50). Presently pending before the court are several motions filed by plaintiff.

I. <u>Motion for Recusal</u>

        Plaintiff moves, pursuant to 28 U.S.C. § 455(a) and (b), for an order disqualifying the undersigned magistrate judge from further presiding in this action. Section 455(a) provides that "[a]ny justice, judge, or magistrate judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b) provides that a judge

1

1  "shall also disqualify himself" under enumerated circumstances, including "[w]here he has a
2  personal bias or prejudice concerning a party. . . ." 28 U.S.C. § 455(b)(1).  A motion pursuant to
3  Section 455 is addressed to the judge whose recusal is sought, who must decide the matter
4  himself.  In re Bernard, 31 F.3d 842, 843 (9th Cir. 1994).  A judge must disqualify himself if he
5  is biased or prejudiced for or against a party.  Hasbrouck v. Texaco, Inc., 830 F.2d 1513, 1523-24
6  (9th Cir. 1987).  However, the bias must arise from an extra-judicial source and cannot be
7  premised only on a judge's rulings while presiding over a case.  Id. at 1524; In re Corey, 892 F.2d
8  829, 839 (9th Cir. 1989); Nilsson, et al., v. Louisiana Hydrolectric, 854 F.2d 1538, 1548 (9th Cir.
9  1988).

10         Plaintiff contends that each of the undersigned's rulings in this case demonstrate a
11  bias in favor of defendants, by allegedly exhibiting partiality towards homosexuality while,
12  paradoxically, promoting conservative religious views, and allegedly demonstrating "a deep-
13  seated animosity against incarcerated litigants and . . . a blinding affinity for law enforcement
14  officials."  (Dkt. No. 77 at 1.)  Plaintiff particularly contests the undersigned's discovery order
15  filed December 8, 2010, which plaintiff contends was "dispositive" and hence outside the
16  jurisdiction of a magistrate judge, citing Section 636(b), Title 28, United States Code, and
17  Federal Rule of Civil Procedure 73(a).
18          Plaintiff made a similar motion against the prior magistrate judge assigned to this
19  case (Dkt. No. 24), which was denied on the following grounds (Dkt. No. 28 at 2):

> Plaintiff indicates in his motion that he disagrees with the court's
> rulings in his case.  This is not sufficient to support a motion to
> disqualify.  Plaintiff's interpretation of the law may not harmonize
> with the court's.  However, displeasure at the rulings obtained in
> an action is not adequate grounds to support disqualification of a
> judge.  Thus, plaintiff's request will be denied.

24         The same reasoning supports denial of the instant motion.  Plaintiff challenges
25  only the content of the undersigned's rulings, without any reasonable averment concerning the
26  undersigned's personal beliefs, biases or prejudice.  Accordingly, plaintiff's motion for recusal

(Dkt. No. 77) is denied.  Plaintiff's specific challenges to the court's December 8, 2010 discovery order are addressed separately below.

II. Discovery Motions

    A. Motion to Modify or Vacate Protective Order issued December 9, 2010

Plaintiff moves to modify or vacate the portion of this court's order filed December 9, 2010, that granted defendants' motion for protective order, thus relieving all defendants from responding to plaintiff's First Set of Interrogatories, and relieving defendants Dovey and Woodford from responding to Request Nos. 4 and 6 of plaintiff's First Set of Requests for Admission.  The court also ordered that defendants need not respond to any other discovery request propounded by plaintiff that seeks information about any defendant's personal conduct or opinions. (Dkt. No. 72 at 2-3, 7.)  The subject discovery sought defendants' personal opinions and activities regarding nudity and sexuality.  (Id., see fns.)

Plaintiff now contends that defendants failed to make a "particularized showing" demonstrating the necessity of the court's "blanket protective order," citing Federal Rule of Civil Procedure 26, and the Federal Rules of Evidence, and that such "blanket protective order" constituted a "dispositive" ruling outside the limited jurisdiction of a magistrate judge.  "Blanket protective orders" are disfavored because they are overinclusive.  See e.g. Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).  Plaintiff contends that the challenged order precluded discovery of information that is relevant to his claims and the issues presented in this case.

Review of the operative Second Amended Complaint demonstrates that plaintiff challenges departmental policy, premised on challenged regulations,[1] that allegedly prohibit prisoner access to materials depicting female nudity.  Plaintiff alleges that this policy violates his

---

[1] In his Second Amended Complaint, plaintiff challenges, inter alia, California Code of Regulations, title 15, sections 3006(c)(15)-(17) (contraband), 3134.1 (publications), 3135(d) (correspondence), and 3136 (mail).  Second Amended Complaint (Dkt. No. 13), p. 6, ¶ 10.

rights under: (1) the Eighth Amendment because it constitutes an atypical and significant hardship on heterosexual prisoners (Claim 15); (2) the Equal Protection Clause of the Fourteenth Amendment because (a) prisoners in other states are allowed to possess such materials (Claim 16), and (b) it is a form of gender discrimination against heterosexuals (Claim 17); (3) the Establishment Clause of the First Amendment because it improperly promotes religious morals (Claim 18); and (4) the Fourth Amendment right to engage privately in heterosexual conduct and to be free from unreasonable seizures of the contested material (Claims 19 and 20). (Dkt. No. 13 at 7-8.)

Resolution of these claims does not require information about defendants' personal views or sexual orientation. Plaintiff is challenging the constitutionality of an institutional policy, as reflected in written regulations. The private opinions and conduct of defendant staff and administrators are irrelevant; only defendants' conduct during the course of their employment is relevant to this action. The challenged order preventing discovery of defendants' personal views is not overinclusive, will not impede resolution of this action, and is not outside the jurisdiction of a magistrate judge acting pursuant to Local Rule 302(c), Local General Order No. 262, and Section 636(b)(1)(B), Title 28, United States Code.

Plaintiff's motion to modify or vacate a portion of this court's order filed December 9, 2010, is therefore denied.

B. <u>Motion to Compel Discovery from Defendants</u>

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 37(a), for an order compelling defendants to produce further documents responsive to plaintiff's discovery requests served in August 2010, and to provide initial responses to plaintiff's discovery requests served in December 2010. Defendants timely filed an opposition to this motion; plaintiff did not file a reply.

The court first addresses plaintiff's December 2010 discovery requests (consisting of second sets of interrogatories and requests for admission). Defendants' counsel states that,

after plaintiff filed this motion, defendants served, without objections, responses to all of plaintiff's December 2010 discovery requests. Counsel explains that the delay was caused by improper calendaring of the court's shortened deadline of January 21, 2011 (Dkt. No. 75 at 2), rather than the standard 45-day deadline previously ordered in this case (Dkt. No. 50 at 5). Counsel states that she discovered the error upon receiving defendants' motion to compel and, thus served, on February 18, 2011, defendants' responses without objections, as required by the Federal Rules of Civil Procedure. See e.g. Fed. R. Civ. P. 33(b)(4) (failure to timely object to an interrogatory waives the objection). In light of defendants' responses and plaintiff's failure to further challenge this matter, plaintiff's motion to compel defendants' responses to his December 2010 discovery requests is denied.

The court next addresses plaintiff's several challenges to defendants' responses to plaintiff's August 2010 production requests. The court initially notes that it previously found, in October 2010, in the context of plaintiff's subpoena duces tecum served on the Attorney General, that statistical information compiled by the California Department of Corrections and Rehabilitation ("CDCR") may be relevant to this action. The court made the following order (Dkt. No. 56 at 6 (fn. omitted)):

> The Attorney General shall generally construe plaintiff's subpoena as requesting any data, numbers or statistics, set forth in final report-form, and any other final report, or written policies or practices, that address the sexuality of California prisoners within the last twenty years. In the present context, "sexuality" shall refer to any heterosexual, homosexual, or transgender activities, as well as incidents of sexual harassment or assault by inmates upon other inmates or correctional staff.

The Attorney General was accorded thirty days to provide the requested information; plaintiff made no objection to that production. It is noted that the instant discovery disputes, while also seeking statistical information, were propounded on the individual defendants, not on the Attorney General or CDCR.

////

1. Statistics Regarding Prisoner Sexual Conduct

In his August 2010 production request, plaintiff sought CDCR "statistics (or any other recording methods maintained by CDCR)" regarding: (1) "the annual number of reported cases of sexual harassment [examples omitted] by male prisoners on female and male correctional employees over the last twenty years" (Request No. 1); and (2) "the annual number of reported cases of sexual assault [example omitted] by California prisoners on other California prisoners over the last twenty years" (Request No. 2).[2] (Dkt. No. 81 at 2-3, 6-7.)

Defendants responded as follows (Dkt. No. 87 at 4-6):

> Defendants object to this request on the grounds that it over broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objections, there are no documents responsive to this request. Attachment 1 is the most current copy of "Incidents in Institutions" which is the only statistical report on inmate rule violations.

Defendants describe the referenced report as "[t]he only statistical report compiled by CDCR concerning disciplinary offenses," but explain that it "does not include the number of sexual harassment violations. . . . Defendants cannot produce reports which do not exist." (Id. at 5.) Defendants have attached a copy of the report (id., Exh. B), with the explanation that it does not contain information about incidents of sexual harassment or sexual assault (id., referencing Exh. C).

This court's review of the report confirms that it does not answer plaintiff's questions, viz., number of incidents of sexual harassment by male prisoners against correctional employees, and of sexual assault by prisoners against other prisoners. By providing the most pertinent recent report (2006), and demonstrating its inadequacy, defendants have satisfied their obligation. Parties are not required to compose documents in response to productions requests, but need only produce existing responsive documents that are within their possession, custody or

---

[2] Request Numbers within this discussion refer to the original numbering of plaintiff's Request for Production of Documents (Set One).

control. Fed. R. Civ. P. 34(a)(1). Defendants have produced all they can in response to plaintiff's Request Nos. 1 and 2.

Plaintiff next seeks statistics regarding "how many male prisoners have received conjugal (over-night) visits from homosexual 'life partners' and/or 'same sex spouses'" (Request No. 4). (Dkt. No. 81 at 3, 7.) Defendants responded as follows to this request (Dkt. No. 87 at 6):

> Defendants object to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objection, there are no documents responsive to this request. See Penal Code section 286(e) and Cal. Code Regs. tit. 15 § 3177.

These legal citations, in addition to defendants' separate statement to plaintiff referenced in their opposition, support defendants' representation that CDCR has collected no relevant statistical information because the subject conduct is not authorized, i.e., because it is a criminal offense to engage in homosexual behavior in state prison, no family visits are made available to same sex partners. Defendants cannot be required to produce statistical reports that do not exist.

### 2. Statistics Regarding Sentencing and Parolees

Plaintiff next seeks "CDCR statistics (or any other recording methods maintained by CDCR) on how many California prisoners are currently serving sentences for one count of non-violent residential burglary who have two or more prior 'strikes,' but who were sentenced as a first time or second time offender and did not receive a life sentence under the 'Three Strikes Law.'" (Request No. 4.) (Dkt. No. 81 at 3, 7.)

Defendants responded as follows (Dkt. No. 87 at 5):

> Defendants object to this request on the grounds that it over broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objections, Attachments 2 and 3 are the current statistical reports on commitment offenses.

Defendants now explain that "Attachment 2" is a statistical report identifying the number of inmates who received a second or third strike, while "Attachment 3," is a statistical report identifying the inmate population by "offense group" but which does not identify inmates'

7

1  sentences. (Dkt. No. 87 at 5.) Copies of the prefaces to these reports have been provided to the
2  court. (Id., Exhs. D, E.) Review of the categories of statistical information contained in these
3  documents supports defendants' contention that they are unable to produce a "combined"
4  document responsive to plaintiff's request. Again, defendants have produced all they can.
5  Moreover, although not asserted by defendants, the requested information does not appear to be
6  relevant to the issues in this case.
7       Plaintiff also seeks further production pursuant to his request for "CDCR statistics
8  (or any other recording methods maintained by CDCR) on how many CDCR parolees, annually,
9  return to prison after committing a new sex crime. Plus, what kind of sex crimes they are
10 committing." (Request No. 6.) (Dkt. No. 81 at 3, 7.) Defendants responded as follows (Dkt.
11 No. 87 at 6):

> Defendants object to this request on the grounds that it is over broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objections, Attachment 4 is the most current statistical report on parolees returned to custody.

15 Defendants have attached to their opposition a copy of the preface to this 2009 report (id., Exh.
16 F), and explain that they informed plaintiff that he can obtain reports for other years by
17 contacting CDCR's "Estimates and Statistical Analysis Section" (id., at 6). This response is
18 adequate. Plaintiff's request did not specify a time frame other than "annually" (see Dkt. No. 81
19 at 6-9), and defendants instructed plaintiff how to obtain reports for other years. Defendants will
20 not be compelled to provide additional reports.

21           3. Nonstatistical Information Requested

22      Plaintiff seeks production of public hearing transcripts concerning proposed
23 penalty increases for prisoners found guilty of sexually harassing female correctional employees.
24 (Request No. 16.) (Dkt. No. 81 at 3, 8-9.) Defendants state that they objected to this request on
25 the ground that it was not reasonably related to the discovery of admissible evidence. (Dkt. No.
26 87 at 7.) The court agrees. Consideration and/or adoption of a regulation increasing the penalty

for a prisoner's sexual harassment of a female correctional officer is not relevant to plaintiff's constitutional challenge to prison regulations restricting prisoner access to material with sexual content, even if plaintiff contends such restriction increases sexual harassment by prisoners.

Plaintiff next seeks to compel defendants to produce "[a] list of CDCR prisons that administer hormone injections to transgender prisoners, or prisons that allow transgender prisoners to receive such injections." (Request No. 19.) (Dkt. No. 81 at 3-4, 8-9.) Defendants state that they objected to this request on the ground that it "lacks foundation, and is not reasonably calculated to lead to the discovery of admissible evidence." (Dkt. No. 87 at 7.) The court agrees. The court's inclusion of "transgender" statistics in the information to be provided by the Attorney General in response to plaintiff's subpoena duces tecum required production of any routinely-kept statistics maintained by CDCR and set forth in a final report. Rule 34 does not requires that defendants compile a list of the impacted prisons. Defendants appropriately objected to this request.

Finally, plaintiff seeks a complete response to his request for "[a] California Department of Corrections and Rehabilitation (CDCR) list of all the names (and tenure length) of every Secretary of the CDCR; every Chief Deputy Secretary, Adult Operations (CDCR); and every Director, Division of Adult Institutions (CDCR) between the years of 2003 and 2011." (Request for Production, Set Two, Request No. 1.) (Dkt. No. 81 at 4, 10.) Defendants responded to the request that, "[a]fter a reasonable inquiry, there are no documents responsive to this request." (Dkt. No. 87 at 8.) Defendants further assert that they should have no obligation to compile such a document for plaintiff. (Id.) Defendants are correct, for the reasons previously noted. Fed. R. Civ. P. 34(a)(1).

Based on the foregoing, plaintiff's motion to compel further discovery is denied in its entirety.

////

////

C.  Motion to Compel Compliance with Subpoenas Duces Tecum

Plaintiff moves to compel compliance with two subpoenas duces tecum served, respectively, on non-parties "The Kinsey Institute" and Dr. Terry Kupers. (Dkt. No. 85.) The court previously denied the request of plaintiff, who proceeds in forma pauperis, that these subpoenas be served by the United States Marshal. (Dkt. Nos. 56, 72.) Plaintiff now avers, supported by certificates of service, that service was made by a third party who deposited the subpoenas in the United States mail on December 30, 2010. (Dkt. No. 85 at 10, 11.) Although blank on the cover sheets as to the place, date and time of production, each subpoena directs in an attachment that the requested documents were to be mailed to plaintiff "[w]ithin 30 days of December 29, 2010," or by January 28, 2011. (Id. at 5, 8.) Plaintiff seeks an order of this court "compelling the Kinsey Institute and Dr. Terry Kupers to produce for inspection and copying the requested documents listed in the subpoenas duces tecum . . . ." (Dkt. No. 85 at 2.)

As this court previously noted (see Dkt. No. 72 at 5), personal service of a subpoena duces tecum is required in order for it to be effective. The requirement of personal service is not explicit in the rule. See Fed. R. Civ. P. 45(b)(1) ("Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person . . ."). However, "[t]he longstanding interpretation of Rule 45 has been that personal service of subpoenas is required. The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) (fns. omitted); accord, 9 Moore's Fed. Prac. § 45.21 (3d ed. 2010) (noting that majority of courts require personal service of subpoenas duces tecum). Although it appears that the Ninth Circuit has only rarely had occasion to construe the service requirement of Rule 45, it has applied the majority rule, most notably in the unpublished decision, Chima v. U.S. Department of Defense, 23 Fed. Appx. 721, 2001 WL 1480640, at * 2 (9th Cir. Dec.14, 2001) ("service by mail rather than by personal service" of subpoenas duces tecum on defense witnesses held improper).

1    Plaintiff cites two cases in support of his argument that service by mail will
2 suffice when all that is sought is the production of documents.  (Dkt. No. 85 at 2.)  Neither case
3 was decided within this circuit, and neither has been relied upon in this circuit.  In Hall v.
4 Sullivan, 229 F.R.D. 501, 502 (D. Md. 2005), the court authorized service of a subpoena duces
5 tecum by Federal Express, where the third party had clearly received the subpoena as
6 demonstrated by his motion to quash for lack of personal service.  While recognizing that a
7 majority of courts require personal service of subpoenas under Rule 45, including the Ninth
8 Circuit as set forth in Chima, supra, the Maryland district court found personal service
9 unnecessary for "subpoena duces tecum which only require production of documents . . . so long
10 as the service is in a manner that reasonably ensures actual receipt of the subpoena by the
11 witness."  Plaintiff's reliance on Shur v. First Nationwide Bank, 184 B.R. 640 (E.D.N.Y. 1995),
12 is less availing.  The court in Shur authorized the dual service of a subpoena duces tecum both by
13 mail and by personal service on the non-party's counsel, who gave the subpoena to his client,
14 thus demonstrating actual receipt; such authorization was granted only after efforts to achieve
15 personal service had failed.  Accord, Franklin v. State Farm Fire and Cas. Co., 2009 WL
16 3152993, *2 (E.D. Mich. 2009) (noting that some courts have sanctioned alternative means of
17 service under Rule 45 only after the propounding party diligently attempted to effectuate personal
18 service and subsequently requested accommodation).

19    The reasoning in Hall may be compelling in the right case.  However, this court
20 has identified only one case within this circuit that bears some consistency with Hall.  In Green v.
21 Baca, (C.D. Cal. 2005) 2005 WL 283361, the court stated in dicta that, if defendant had standing
22 to challenge the subpoenas duces tecum served on third-party witnesses, his challenge based on
23 lack of personal service would fail because delivery of the subpoenas at the witnesses' respective
24 offices had proved effective.  (Id. at *1.)  However, Green was decided more than six years ago,
25 and has not been relied upon by another court in this circuit to construe Rule 45 to permit other
26 than personal service.  Moreover, even if this court was inclined to apply the reasoning of Hall

and the dicta in Green, the requirement that service "reasonably ensure[] actual receipt of the subpoena by the witness," Hall, 229 F.R.D. at 502, would not support service by regular mail in the instant case.  Service by regular mail does not guarantee actual delivery.  See e.g. Firefighters' Inst. for Racial Equality v. City of St. Louis, 220 F.3d 898, 903 (8th Cir. 2000) (fax or regular mail cannot satisfy Rule 45 because delivery is not assured); cf. Doe v. Hersemann, 155 F.R.D. 630, 630 (N.D. Ind. 1994) (allowing service by certified mail).  Plaintiff's inability to prove actual service herein is underscored by the failure of either recipient to file a motion to quash.  Moreover, as the court previously concluded, the subject subpoenas are overly broad and unduly burdensome (Dkt. Nos. 56, 72), and any motion to quash would have been granted.

As noted by Wright and Miller, while "[i]n recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service[,] [t]his emerging minority position could cause confusion and may prompt clarification of the rule.  Until that happens, however, personal delivery of the subpoena is the safest course . . . to follow."  Wright & Miller, supra, § 2454 (fns. omitted).

The court will therefore deny plaintiff's motion to compel non-parties "The Kinsey Institute" and Dr. Terry Kupers to comply with the subpoenas duces tecum plaintiff served upon them by regular mail.

D. Motion for Issuance of Subpoenas Duces Tecum

Plaintiff requests issuance of ten subpoena duces tecum, signed by the Clerk of Court but otherwise blank.  (Dkt. Nos. 79 & 84.)  While this court has previously denied plaintiff's repeated requests for an order directing service of plaintiff's subpoenas by the United States Marshal (Dkt. Nos. 56, 72), the Clerk of Court is obliged to issue blank subpoenas duces tecum upon the request of a party (Dkt. No. 72 at 6).  See Fed. R. Civ. P. 45(a)(3) ("[t]he clerk must issue a subpoena, signed but otherwise blank, to a party who requests it").  The court will therefore direct the Clerk of Court to send plaintiff the requested subpoenas.

However, plaintiff, who has been previously admonished to refrain from filing further frivolous discovery motions (Dkt. No. 75 at 2), is informed that the court will view with disfavor any motion made by plaintiff to obtain compliance with any new subpoena.  This is particularly so, given the close of discovery in this action.  Plaintiff is reminded that, by order filed December 14, 2010, this court extended the discovery deadline from December 31, 2010 to January 31, 2011, for the *limited purpose* of "allowing sufficient time for the parties to provide responses to any currently pending discovery requests, and to permit service of a limited number of narrowly-drawn additional discovery requests" precisely set forth by the remainder of the court's order. (Dkt. No. 75 at 2.)  The deadlines preceding that order, clearly set forth in the court's discovery order filed July 13, 2010, authorized the propounding of discovery no later than October 15, 2010.  Thus, the propounding of additional subpoena duces tecum are not encompassed within the substantive limitations of the court's last discovery order or, therefore, the extended discovery deadline.  Plaintiff's requests for issuance of the subpoenas, initially filed January 3, 2011 (Dkt. No. 79), and renewed January 31, 2011 (Dkt. No. 84), were also outside these parameters.

Subject to these limitations, plaintiff's request must nonetheless be granted.  Fed. R. Civ. P. 45(a)(3).

III.  Motion for Stay and Case Status

Plaintiff seeks a stay of these proceedings until the court rules on his several motions pending before the undersigned and the district judge. (Dkt. No. 83.)  Plaintiff argues that if the court grants any of the pending motions, the direction of this action "will [be] fundamentally alter[ed]."  (Id. at 2.)  Petitioner relies on Federal Rule of Civil Procedure 26(c), which authorizes issuance of a protective order relative to discovery.

Due to the lack of merit of the instant motions, the court finds no basis to issue a stay of these proceedings.  Should the district judge find merit in plaintiff's additional motions, the undersigned will consider whether current deadlines should be extended.  However, the

parties are presently reminded that discovery is now closed in this action. The deadline for filing a dispositive motion remains March 31, 2011. In addition, plaintiff is again admonished to refrain from filing spurious motions (<u>see</u> Order filed December 14, 2010 (Dkt. No. 75 at 2)), and cautioned that he must comply with the requirements for filing and/or opposing a motion for summary judgment or motion to dismiss as set forth in this court's order filed February 12, 2010 (Dkt. No. 30).

IV.   <u>Conclusion</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion (Dkt. No. 77) for recusal of the undersigned is denied.

2. Plaintiff's motion (Dkt. No. 82) to modify or vacate the "protective order" portion of this court's order filed December 9, 2010, is denied.

3. Plaintiff's motion (Dkt. No. 81) to compel further discovery responses from defendants is denied.

4. Plaintiff's motion (Dkt. No. 85) to compel compliance with his subpoenas duces tecum served on non-parties "The Kinsey Institute" and Dr. Terry Kupers is denied.

5. Plaintiff's motions (Dkt. Nos. 79, 84) for issuance of subpoenas duces tecum are granted; the Clerk of Court is directed to mail to plaintiff, with this order, ten signed, but otherwise blank, subpoenas duces tecum; plaintiff is cautioned, however, that the court will view with disfavor any motion made by plaintiff to compel compliance with a newly served subpoena.

6. Plaintiff's motion (Dkt. No. 83) to stay this action is denied.

7. The parties are reminded that discovery has now closed in this action, and that the deadline for filing dispositive motions is March 31, 2011.

DATED: March 16, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

alex2773.mtns